IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. _____ |
| TCI OF ALABAMA, LLC, ) ) ) | JURY TRIAL DEMAND |
| Defendant. ) | |

## COMPLAINT

NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e, *et seq.* ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of sex and provide appropriate relief to a class of aggrieved females who were denied employment because of their sex. As alleged with greater particularity in Paragraphs 11 through 21 below, since at least August 1, 2020, Defendant has intentionally failed to recruit and has denied employment to a class of aggrieved females available to accept laborer positions at Defendant's Pell City, Alabama plant because of their sex. These failures have amounted to a pattern or practice of recruitment and hiring discrimination against the class of aggrieved females available for laborer positions because of their sex. In furtherance of this discrimination, Defendant has instructed multiple third-party temporary staffing agencies it uses to hire laborers not to hire, refer, or assign females to work in laborer positions at Defendant's Pell City, Alabama plant.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Northern District of Alabama, Middle Division. Venue is appropriate in this court.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5 (f)(1) and (3).

4. At all relevant times, Defendant has continuously Defendant has continuously been a foreign limited liability company doing business in Alabama and has continuously had over 15 employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, a charge was filed with the Commission by Charlotte Burrows, during her tenure as Chair of the Commission, alleging violations of Title VII by Defendant.

7. On May 17, 2024, the Commission issued Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in conciliating the matter.

8. The Commission engaged in conciliation discussions with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant an acceptable conciliation agreement, and, on July 29, 2024, the Commission issued Defendant a Notice of Failure of Conciliation.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Defendant's Pell City, Alabama plant recycles and disposes of both PCB-contaminated items and non-contaminated items such as metals from used and obsolete oil-filled transformers and other electrical equipment.

12. From at least August 1, 2020, to the present, Defendant has engaged in unlawful employment practices in recruiting and hiring individuals to work as laborers at its Pell City, Alabama plant in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000(e)-2(a). These unlawful practices include, but are not limited to, the following:

   a) Since at least August 1, 2020, Defendant has intentionally excluded from employment a class of qualified females seeking employment as laborers in favor of hiring equally or less qualified male applicants. This practice includes Defendant failing to recruit or hire females for laborer positions.

      b)      Defendant's President (male) repeatedly instructed managers and other individuals involved in Defendant's hiring practices not to hire females or accept females as temporary employees for open laborer positions in the plant.

      c)      When Defendant began using third-party staffing agencies in or around 2017 to fill open laborer positions, Defendant's President instructed those agencies that Defendant did not and would not accept females to work in laborer positions at its plant.

      d)      From 2017 until around October 2022, with the knowledge and at the direction of Defendant's President, managers and other individuals involved in Defendant's hiring practices instructed those staffing agencies that Defendant did not and would not accept females for laborer positions in the plant.

      e)      Due to the industrial nature of the environment of Defendant's plant and potential contamination from the materials which laborers handle, laborers require locker rooms and shower facilities at the jobsite and Defendant provides laborers with clothing and protective gear.

      f)      In or around 2006 Defendant purchased the Pell City, Alabama plant ("the plant") from Trans-Cycle Industries, Inc. Trans-Cycle Industries, Inc., had converted the locker room and showers originally built for females into male-only facilities.

      g)      From 2006 until around October 2022, Defendant operated with male-only locker rooms and showers available for laborers and no locker rooms and showers were available for female laborers in the plant.

      h)      From 2006 until around October 2022, Defendant did not purchase or provide clothing or protective gear for any female laborers including TCI uniforms, boots, jackets, winter coveralls, or Tyvek suits, all of which Defendant purchased for male laborers.

i) On multiple occasions, managers including the Manager of Over 500 Regulated Production and Maintenance, urged Defendant's President to begin hiring female laborers, which Defendant's President refused to do.

j) When Mr. Head told other managers including the Manager of Transportation and Logistics, and a Vice-President, that Defendant should hire female laborers, they both stated they would not hire female laborers because the women would distract the male employees from production and risk being sexually harassed by male employees.

k) On one occasion, Defendant's Director of Environmental Health and Safety confronted Defendant's President, telling him that refusing to hire female laborers violated federal anti-discrimination law, but Defendant's President responded that he would run his plant as he wished and did not change Defendant's practice.

l) On another occasion, Defendant's Director of Environmental Health and Safety asked the Manager of Transportation and Logistics why Defendant did not hire any females to work in the plant. The Manager of Transportation and Logistics responded, in sum and substance, "Where are they going to shower? Where are they going to change their clothes?" He said that his department's production would decline stating, in sum and substance, "I won't get any work out of the guys. All they will be doing is talking to the ladies."

m) On other occasions when the Environmental Safety and Health Director (female) brought up safety issues with the Manager of Transportation and Logistics, he would say, in sum and substance, "That's none of your business" or "That's grown men's business. Stay out of it."

n)   On another occasion, the Environmental Safety and Health Director told a male Vice President that Defendant should give women the opportunity to work in the plant, and the male Vice President responded, "that's not a good idea."

o)   In or around 2020, following the onset of the COVID-19 pandemic when Defendant had difficulty filling open laborer positions, managers requested permission from Defendant's President to start accepting female referrals from staffing agencies. Despite assurances from the agencies that qualified females were available for those jobs, Defendant's President continued to refuse to hire or accept females for laborer positions.

p)   Defendant's failure to recruit women for labor positions is Defendant's standard operating procedure. As part of its standard operating procedure, Defendant also instructs staffing firms not to refer women for laborer positions.

13.   Following Defendant's receipt of an EEOC charge filed against it in September 2022 related to its long-standing practice of not hiring females to work in the plant, Defendant modified some shower and locker room facilities for use by female laborers and began permitting staffing agencies to refer some females to fill laborer positions in or around October 2022.

14.   Upon information and belief, from October 2022 to present, Defendant has continued to discriminate against females in recruitment and hiring for laborer positions in its plant.

## COUNT I

[Title VII – Sex Discrimination – Failure to Hire and Failure to Recruit]

15.   Plaintiff incorporates by reference and reasserts the allegations in Paragraphs six (6) through fourteen (14) of this Complaint.

16. Since at least August 1, 2020, Defendant has engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

17. As set forth in Paragraphs six (6) through fourteen (14) above, since at least August 1, 2020 Defendant's discriminatory treatment of a class of aggrieved females included, but was not limited to, favoring male applicants or referrals from staffing agencies for available laborer positions, and failing to recruit and hire qualified female applicants or accept staffing agency referrals because of their sex (female).

18. Since at least August 1, 2020, through the hiring and recruitment practices complained of in Paragraphs six (6) through fourteen (14) above, Defendant has engaged in a pattern or practice of discrimination against a class of qualified and available females based on their sex. This discriminatory treatment included, but was not limited to, favoring male applicants or referrals from staffing agencies for available laborer positions, and failing to recruit and hire qualified female applicants or accept staffing agency referrals because of their sex (female).

19. The unlawful employment practices complained of Paragraphs six (6) through fourteen (14) above were and are intentional.

20. The unlawful employment practices complained of in Paragraphs six (6) through fourteen (14) above were done and are being done with malice or reckless indifference to the federally protected rights of a class of females qualified for laborer positions.

21. The effect of the practices complained of in Paragraphs six (6) through fourteen (14) above has been to deprive a class of females for laborer positions of equal employment opportunities and otherwise adversely affect their status as potential employees because of their sex (female).

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in employment practices that discriminate on the basis of sex.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female applicants, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole the class of aggrieved female potential laborer employees by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, rightful place hiring of qualified females, and, where appropriate, front pay or instatement.

D. Order Defendant to make whole the class of aggrieved female potential laborer employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

E. Order Defendant to make whole the class of aggrieved female potential laborer employees by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, humiliation, and inconvenience in amounts to be determined at trial.

F. Order Defendant to pay the class of aggrieved female potential laborer employees punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Karla Gilbride
General Counsel

Christopher Lage
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 M Street, NE
Washington, DC 20507

Marsha Lynn Rucker (PA 90041)
Regional Attorney
marsha.rucker@eeoc.gov
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street South
Birmingham, Alabama 35205
Tel.: (205) 651-7045