## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**     Plaintiff, | |
| v. | |
| **TCI OF ALABAMA, LLC,**     Defendant. | Case No. 4:25-cv-89-CLM |
| **TCI OF ALABAMA, LLC,**     Third-Party Plaintiff, v. | |
| **ONIN STAFFING, LLC,** *et al.***,**     Third-Party Defendants. | |

### **MEMORANDUM OPINION**

In this Title VII case, the Equal Employment Opportunity Commission ("EEOC") alleges that TCI of Alabama LLC ("TCI") discriminated against women by refusing to recruit and hire them for laborer jobs at TCI's Pell City, Alabama Plant. (*See* doc. 1). Discontent to sit at the Defendant's table alone, TCI filed a third-party complaint against three staffing firms who have, by way of contract, referred laborers to TCI. (*See* doc. 23). These firms are: Onin Staffing LLC, Personnel Staffing, Inc., and Worksmart, Inc. (collectively, "the Staffing Firms"). At bottom, TCI contends that if it violated Title VII for failing to hire women, then the Staffing Firms are also to blame for failing to refer TCI female candidates and must therefore indemnify TCI. The EEOC and the Staffing Firms move to dismiss TCI's third-party complaint. (Docs. 27, 29, 31, 37, 60). For the reasons below, the court **GRANTS** the EEOC's motion and **DISMISSES** TCI's third-party complaint.

## BACKGROUND

As discussed above, this case stems from alleged Title VII violations TCI committed by refusing to hire women for laborer jobs. So the court starts by explaining the EEOC's allegations against TCI before proceeding to TCI's third-party complaint and the pending motions to dismiss.

### A.   TCI Allegedly Violates Title VII

TCI disposes and recycles PCB contaminated items at its Pell City Plant. So TCI employs laborers to disassemble PCB contaminated items. To fill those laborer jobs, TCI has, since 2020, "relied exclusively on third-party temporary staffing agencies" who refer qualified applicants. (Doc. 23, ¶ 30).

At some point, the EEOC learned that TCI refused to recruit and hire qualified women for laborer positions. So after an investigation, the EEOC issued TCI a letter of determination, finding reasonable cause to believe that TCI violated Title VII and inviting TCI to conciliate the matter. When the parties failed to reach a conciliation agreement, the EEOC filed this lawsuit.

The EEOC brings one claim against TCI for sex discrimination under Title VII. According to the EEOC, TCI has "intentionally excluded from employment a class of qualified females seeking employment as laborers in favor of hiring equally or less qualified male applicants." (Doc. 1, ¶ 12). In support of its claim, the EEOC alleges that TCI refuses to hire women laborers because, among other reasons, women would "distract" male workers and increase the risk of sexual harassment in the workplace. (*Id.*). And, as most relevant here, the EEOC also alleges that TCI instructs third party staffing agencies, like the Staffing Firms, not to refer women for its laborer jobs.

### B.   TCI Impleads the Staffing Firms

TCI answered the EEOC's complaint and then filed a third-party complaint for breach of contract against the Staffing Firms. (*See* docs. 10,

23). In its third-party complaint, TCI says that the Staffing Firms agreed via contracts to refer qualified laborers to TCI and to do so lawfully. The contracts also include indemnification provisions, which require the Staffing Firms, as joint employers of referred applicants, to indemnify TCI "for **all** claims caused by [the Staffing Firms'] breach of contract," including a breach caused by failing to follow the law when referring applicants. (Doc. 23, ¶ 39 (emphasis added)).

TCI claims that, if the EEOC's allegation that TCI instructed the Staffing Firms to not refer women proves true, then the Staffing Firms' compliance with TCI's unlawful instruction was itself "unlawful and violated Title VII." (*See id.* ¶¶ 50-51). And, as already discussed, the Staffing Firms are contractually obligated to indemnify TCI when they break the law and expose TCI to legal claims. So, bundling the contractual provisions together, TCI contends that the Staffing Firms must indemnify TCI for "[a]ny damages awarded to potential laborer employees" and "[a]ll attorney fees, court costs, and other expenses expended by TCI in this litigation." (*Id.* ¶¶ 57-58).

The Staffing Firms and the EEOC move to dismiss TCI's third-party complaint (Docs. 27, 29, 31, 37, 60). While their arguments for dismissal vary, both the Staffing Firms and the EEOC contend that TCI fails to state a claim for relief under Rule 12(b)(6).

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted).

This tenet, of course, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## DISCUSSION

As noted above, the Staffing Firms and the EEOC offer various reasons for why TCI's third-party complaint should be dismissed. At least one reason offered by the EEOC—that Title VII preempts TCI's breach of contract claim—requires dismissal.

"Congress enacted Title VII to assure equality of employment opportunities without distinction with respect to race, color, religion, sex, or national origin." *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 468 (1982). To that end, Title VII creates a "comprehensive remedial scheme" designed to eradicate discriminatory conduct based on protected characteristics like sex. *See Dickerson v. Alachua Cnty. Com'n*, 200 F.3d 761, 766 (11th Cir. 2000); *see also Thurmond v. Drive Auto. Indus. of Am.*, Inc., 974 F. Supp. 2d 900, 908 (D.S.C. 2013).

Given Title VII's "comprehensive remedial scheme," several federal courts have held that parties accused of violating Title VII may not bring claims for indemnification against third parties to skirt their own liability. *See, e.g.*, *EEOC v. Blockbuster*, 2010 WL 290952, at *3-4 (D. Md. Jan. 14, 2010); Thurmond*, 974 F. Supp. at 908. Consider, for example, *EEOC v. Blockbuster*. In that case, the EEOC brought a Title VII action against Blockbuster for failing to prevent and correct known sexual harassment at one of its warehouse facilities. *Blockbuster*, 2010 WL 290952, at *1. Blockbuster filed a third-party complaint against Venturi, a staffing firm, because Venturi had agreed to "defend, hold harmless, and indemnify Blockbuster against any loss arising from any employment claim based on an allegation that Blockbuster is an employer." *Id.* The district court

4

granted Venturi judgment on the pleadings and held, in relevant part, that "[t]he primary goal of Title VII to eradicate discriminatory conduct would be thwarted if Blockbuster were permitted to contract around its obligations and shift its entire responsibility for complying with Title VII" to a third party.[1] *Id.* at *4; *see also Thurmond*, 974 F. Supp. at 907-08 (adopting *Blockbuster's* reasoning and holding that a Title VII defendant's third-party claim for contractual indemnification was preempted by Title VII and federal public policy").

*Blockbuster* is on point here. In fact, its public policy rationale is even more forceful because TCI's third-party indemnification claim rests on the EEOC's allegation that TCI instructed the Staffing Firms not to refer qualified women for laborer jobs. Federal public policy would be undermined if TCI had the ability to tell others to help TCI violate federal law and then pay TCI if TCI got caught.

Recognizing that *Blockbuster* and the EEOC's other cited cases aren't binding on this court, TCI cobbles together authority from inside and outside the Eleventh Circuit to support its third-party claim for contractual indemnification. (*See* doc. 43, pp. 10-14). But none of TCI's cited cases include the precise issue before the court or the salient facts that TCI pleads in its third-party complaint. Take, for example, *Haynes v. Ocean Hospitalities, Inc.*, 2013 WL 12358481 (M.D. Fla. Jan. 14, 2013) (report and recommendation adopted). In that case, a district court determined that joint employers may seek contractual indemnification from one another when each is alleged to have violated the Fair Labor Standards Act. *Id.* at *7-8. Aside from the fact that *Haynes* involved the FLSA and not Title VII, the case still fails to support TCI's argument because neither employer in *Haynes* allegedly instructed the other to violate federal law. Indeed, none of TCI's cited cases (a) involve Title VII

---

[1] The *Blockbuster* court went on to deny Blockbuster's motion for leave to amend its third-party complaint to add a claim for breach of contract against Venturi. According to the court, Blockbuster's proposed claim for breach of contract was a "*de facto* claim for indemnification, and … similarly impermissible." *Blockbuster*, 2010 WL 290952, at *4.

and (b) contain facts where the party seeking indemnification allegedly instructed a joint employer to violate federal law.

—

Because Title VII preempts TCI's third-party claim, the court will grant the EEOC's motion to dismiss.[2]

## CONCLUSION

For the reasons above, the court **GRANTS** the EEOC's motion to dismiss (doc. 29) and **DISMISSES** TCI's third-party complaint. Because amending the third-party complaint would be futile, this dismissal is **WITH PREJUDICE**. The court **DENIES AS MOOT** the Staffing Firms' motions to dismiss. (Docs. 27, 31, 37, 60).

The court **DIRECTS** the Clerk of Court to remove the Staffing Firms as parties to this case. The court will enter a separate order carrying out this ruling.

**DONE** and **ORDERED** on March 9, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE

---

[2] The court's opinion doesn't mean that the Staffing Firms will escape liability under Title VII. If the Staffing Firms broke the law by complying with TCI's unlawful request not to refer qualified women for laborer jobs, then they too may face liability under Title VII in some other case. But the court's opinion does mean that, in this case, TCI cannot pass off its own Title VII obligations to others.

6